Our last case this morning is Biomedical Device Consultants & Laboratories of Colorado v. Vivitro Labs, 2023-2393. I think it is still morning, so good morning, your honors. May it please the court. I'm Greg Tampkin. I'm here on behalf of BDC Laboratories. We're here following a preliminary injunction hearing in which the court found no infringement based on entirely flawed claim construction and invalidity of four claims based on really a misunderstanding of how anticipation works. Did the court find no infringement or that there were substantial questions regarding validity and infringement? The court did find that there are substantial questions regarding that, which is, of course, the standard. And doesn't that defeat your appeal? Of course not, your honor. Preliminary injunction? Of course not, your honor, because when this court has held on numerous occasions that even on preliminary injunction, claim construction is reviewed de novo. And in this case, the court made a fundamental error. It ignored multiple canons of claim construction. Okay, but just hold on a second. Suppose we were to agree with you that there's a problem in the infringement analysis, which I'm not saying there is. But the finding of a substantial question of invalidity is itself sufficient to affirm the denial of injunction, right? In this case, there was a finding. Yes, no? If there is a substantial question of invalidity and it covers all of the claims, then that would also be a way to defeat the preliminary injunction. I agree. And here, between obviousness and anticipation, the district court found a substantial question with respect to all assertive claims. Isn't that right? That is not correct, your honor. Tell us where that's wrong. The district court specifically found obviousness with respect to, excuse me, invalidity and anticipation with respect to the claims that were issued. There were four claims that were claimed to have been anticipated. 1, 2, 8, and 13, I believe. And it specifically said on... Then the court went on to talk about obviousness. It went on? Admittedly, it's a short opinion, but at the bottom of A11, it says, Similar doubts remain for the concept of obvious. And the court will benefit from briefing to determine whether the teachings of Xi, Dynatech, and Liu could have been combined. What the court seems to be saying is that when we get to the merits of this, I'll benefit from further briefing on this issue. What does that mean that he hasn't found a substantial question of obviousness? I mean, there certainly is no dearth of an adequate record to support a finding of a substantial question on obviousness, right? Because there's an expert report that goes through the various claim limitations and prior art. And this says there's a substantial issue of obviousness. When the court was looking at anticipation, it specifically said, I find that there is anticipation of claim one and the other dependent claims and sites to DASI. That's their expert. When the court turns to obviousness, it says, I would benefit from further briefing. But the difference here is that when the court was going to say it's obvious or it's anticipated, the court knew how to do that. And when it said it's anticipated, the court did so. It didn't have to find that it was obvious. All the court needs to do is to say, I think this is a substantial question of obviousness here. And when we get to the merits, I'd benefit from further briefing. But what the court said, I'm just drawing the comparison, Judge Dyke, which is when the court says there's substantial questions as to anticipation, it said it. When it talks about obviousness, it says that it would benefit from- A substantial doubt. I mean, I'm looking at A11. It's all one page. At the top, what you apparently consider, I'm sure you disagree on the merits, but you consider an adequate statement, is the court finds a substantial question concerning whether the prior art anticipated, correct? Correct. You say perfectly adequate, sufficient explanation. That's a finding. You don't like the finding. But it is a finding. Right. And so then barely whatever, 20 lines down, turning to obviousness, the court says, the 935 patent does not specify the pressure source that moves the fluid, so substantial doubt remains as to validity based on the plain language of the patent. Admittedly, the shift is from substantial question to substantial doubt. But you're saying that's an inadequate finding. For two reasons, Your Honor. The first reason is because it's not enough on obviousness just to say, I see it there. There has to be both a motivation to combine and consideration of the secondary considerations of non-obviousness. Absolutely true, when the merits are determined. But that was raised down below, and the court ignored it. Well, the court didn't ignore it. In fact, the court addressed it. What the court said was, when it was dealing with down below, it said, I need more briefing, because there's one paragraph in Dr. Dossi's declaration, paragraph 76, in Dr. Dossi's declaration, that talks about motivation to combine. Where have we ever said that a district court, in determining whether there's a substantial question of obviousness, can't just say something to the effect of, I've considered all the evidence, and there's a substantial question of obviousness without getting into all the components of obviousness. If that were the situation here, perhaps that would be a different situation. But here, what the court tells us is, I haven't made a finding. I haven't considered. I need more briefing on this obvious motivation to combine question. It made a finding that there's substantial doubt, which is all it has to do at this stage. I don't think that's correct. I think it made a finding. Look, I don't think the court understood the analysis. I think the court made a finding that there's substantial doubt as to whether or not it could track an excess volume area in the G reference, and maybe the Dynatech reference, and then ignore, recognize it didn't have any information or sufficient information to make a finding on obviousness. Because it needed the motivation to combine, and it didn't consider secondary considerations of non-obviousness. Now, I agree that the standard is lower on a preliminary injunction motion, but that doesn't mean the standards don't exist. It doesn't mean that if there's evidence presented that the court can not consider it or just not make a, or ignore it. You have to do the full analysis. And here, that full analysis wasn't done. There wasn't a full analysis of obviousness, or even an analysis to get to whether there's a substantial question of invalidity or not. Likewise, there wasn't the analysis of secondary considerations of non-obviousness. It just wasn't conducted. It wasn't considered. And I understand that there's cases that say even at a preliminary injunction stage, when you're sort of considering less evidence or a less modicum of evidence, you still have to do the full analysis. And that's really the TBRO manufacturing case, which is TBRO Manufacturing versus Firefly Equipment, 748 F3rd 1159 at 1169. You still need to do the full analysis. Now, that was also in the context of claim construction, but it was both claim construction and invalidity. In that case, the court did reverse a preliminary injunction, a denial of a preliminary injunction. On secondary considerations, help me on what happened in the district court. When did you first raise substantial or secondary considerations? Did you make a showing or attempt to make a showing of a nexus between the patent and your own embodiments? Sure, that's all in the declarations of both the two declarations that were submitted. From a procedural perspective, this was originally a case that was filed in Colorado. It was transferred to California as a result of the transfer. Everything was refiled. The new declarations that were submitted in California really were responsive already to the declarations that had been filed in response. I believe there's a lengthy oral argument. The secondary considerations came up, I believe, didn't it? It came up in passing, yes. But it did come up. It came up to some level. There's references in the declaration of Craig Weinberg, which is 866. It talks all about the commercial success. And, frankly, the declaration of Mr. Munem, Appendix 1154, also talks about the fact that the BDC inventions and product came on the market and totally upended the market. It went from a startup in 2010, roughly, and within five to seven years had 75% to 80% of the market. The defendant was arguing a lack of nexus, right? The defendant at this court argued a lack of nexus. Down below, the defendant did not argue a lack of nexus with respect to the secondary considerations. They argued a lack of, excuse me? There was no argument about nexus in the district court? There was an argument only about the nexus between the irreparable harm factors and the allegations of irreparable harm. It was not about secondary considerations. You're asking us to conclude that the district court ignored the evidence of secondary considerations and also failed to consider whether it could so rebut the prima facie case that it would be left with no substantial question of obviousness. That's what you need us to find, right? I don't think so. I think, Your Honor, I need you to find that that's, in fact, what the district court said. That the district court said there's anticipation. With respect to obviousness, I have questions about whether the elements map to those other references. But I need more briefing on these other things, which means there is no finding on obviousness. Do you agree, then, that we have to sustain his determination with respect to anticipation? I don't. I think the court was wrong with respect to anticipation. The claim requires a test chamber. Let me step back. Obviousness was based on a Dynatech reference. The Dynatech reference has a test chamber and a separate chamber that sits above the test chamber that's connected by a long tube. We don't sit here to make the determinations of whether it was shown to be anticipated or not. We have expert testimony on both sides, completely expert testimony. The district court found that that raises a substantial question. That's a no, right? If that's not an abuse of discretion, yes. It doesn't mean you have to accept it. You still need to look at it. And in this case, the elements of the claim require that the excess volume area be in the test chamber. This excess volume area was separate and apart from the test chamber. The claim requires that the excess volume area operate itself at a different rate. At an accelerated rate. And the only evidence that was relied upon with respect to the excess volume area operating at a different rate is a statement about the excess volume area buffering systemic pressure changes that are for small leakages that are transient and thermal effects. In other words, the reliance in that reference that relates to how that excess volume area operates was it doesn't operate at an accelerated rate. It only deals with changes in temperature over time because these products are run for six months at a time and system and small leaks. So there's no mapping on the Dynatech reference to the actual claims. And that's what the judge did. The judge didn't look at the overall legal landscape of how you do anticipation. Well, you're well into your rebuttal time. I assume you want to save it? I will save it. Thank you, Your Honor. Mr. Thomas? Thank you, and may it please the court. Regardless how the claims are construed, this court should affirm the order denying BDC's preliminary injunction motion because the district court made factual findings that the vitro raised substantial questions as to both validity and infringement. And BDC has not shown that both of those factual findings are clearly erroneous as it must for the court to reverse or remand. To the contrary, the district court's findings are correct. Now, regardless of how the claims are construed, they are invalid. The dispute over the meaning of the validity or the meaning of the term excess volume area is not relevant to the validity analysis the district court performed. And I want to pick up on the questions about the obviousness analysis that the district court performed. The district court's statements about obviousness, we submit that the only reasonable interpretation of its statements is that the vitro established a substantial doubt of invalidity under Section 103 for two reasons. First, as Your Honor pointed out, this line about substantial doubts remain for the concept of obviousness. The question is similar to what? There were similar doubts remain for the concept of obviousness. Well, it's similar to all the other doubts that the district court had expressed. Doubts about the infringement case. Doubts about the anticipation case for the validity of the claims. And substantial concerns remain. Substantial concerns that the 935 patent is invalid. And substantial doubt remains as to validity. So what about secondary considerations? They say that there may be no argument about nexus in the district court. Is that true? That is incorrect, Your Honor. In the briefing below, BDC, this was a question that was not answered. BDC did not raise the secondary considerations argument until its reply brief below. And the focus of the argument was about, or at least the evidence was argued about nexus. We argued pages about the evidence about no tie. You mean at the oral hearing? In the briefing before the oral hearing, we argued there was no nexus. Wait, just help me with the analogy. You say they didn't raise the secondary considerations until the reply. How did the briefing go forward from there? Okay. Well, let me, after the reply or before that? No, beginning with the reply. Okay. Beginning with the reply, they raised the secondary considerations, that specific argument. They said, the vitro failed to address secondary considerations, but BDC had not made the secondary considerations argument in its opening brief. At the oral hearing, at the four-hour hearing. So was there any further briefing on that issue? There was not any further briefing on the issue, but at the oral hearing, we discussed it. Docket entry 92, pages 115 to 117 of the transcript, which it's not in the joint appendix, but we discussed and rebutted all of that discussion about the nexus issues and pointed out that BDC hadn't satisfied its burden, hadn't shown co-extensiveness, hadn't even shown that there was, that this product that is, hadn't even introduced sufficient evidence to show that the product was in fact an embodiment of the claims. There was discussion in BDC's opening brief and our response brief about a nexus as it relates to the irreparable harm. So there's a similar nexus requirement to show irreparable harm, and so it's the same evidence that BDC points to to support its irreparable harm arguments that it now says supports its secondary considerations arguments. And then, does the district court say anything about the secondary considerations evidence? No, Your Honor, it does not. And why is that not a problem? Haven't we said you always have to consider secondary considerations evidence if it's in evidence? Well, I don't think it's a problem because at the preliminary injunction stage, vulnerability is the question. Is there a substantial question as to the validity of the claims? And so, I don't think it's error to not go into detail about this alleged evidence. Well, not detail, but doesn't the district court at least have to ask itself, do I maybe have a case where the secondary consideration evidence is so overwhelming that it so rebuts the prima facie case that I now recognize there is no substantial question of validity? If there was evidence like that in the record, perhaps the district court might have to do that. But here, the record is extremely thin on whatever the secondary considerations evidence is. The only facts that BDC points to is that it has a product that was successful and that that product displaced Vivitro's product from the market. And that's frankly, that's not really in dispute. What is in dispute is whether or not there's a nexus that the reason that the product was successful was due to any of the patented features. In fact, the evidence supports that it is not. Dr. Weinberg, one of the inventors and BDC's CTO, page 869 of the appendix, paragraph 12, he lays out, again in support of his argument and BDC's argument that there was irreparable harm, he lays out five reasons that the BDC product was more attractive in comparison to Vivitro's legacy product. None of those reasons relate to the features of the claims. In fact, one of those is the same reason that Mr. Muname says in his declaration, that's our president, his declaration at pages 1157 to 59, one of those reasons is the same thing, that this product, BDC's VDT3600i product, it had multiple motors. Mr. Muname says that was a feature that the market appreciated. So does Dr. Weinberg, BDC's witness. And in fact, BDC's own marketing materials, page 1478 of the record, it touts features not covered by the claims, not mentioned in the patent anywhere. So there's no evidence that would be sufficient to find a nexus for secondary considerations. Counsel, do we need to get into claim construction? No, Your Honor, you do not. Because there's no dispute that the invalidity positions are not relevant to the validity positions. You can, if there is no clear error in the findings, the factual findings, of a substantial question of invalidity or a substantial question of validity, then there's no need to address the claim construction. But if we affirm the denial of the preliminary injunction, as you wish, isn't claim construction relevant when it goes back? I don't think that it is necessary. You could write an opinion that says we express no... Sorry, excuse me, Your Honor? I think Judge Lurie is asking you what happens when the court gets to the merits. When the court gets to the merits? He said that he wanted to hear more briefing on... The infringement issue and the claim construction are relevant, right? That's a simple yes. Yes, Your Honor. The claim construction is, in fact, yes. We agree that the claim construction is relevant to the infringement analysis. And so defend the claim construction. The claim construction was correct because it's the only one that is supported by the specification. There's no evidence or argument that this excess volume area term was one that was known in the art. And so we look to the intrinsic evidence to say, OK, what does that evidence say about it? The patent only describes the compliance chamber structures as... It sounds like you're arguing the terms are construed to be limited to what's expressly disclosed in the specification, which you know we don't do. So it sounds like you're undermining your own argument. This court does have cases that say that when the patentee describes its invention in only one way, and that is what the patentee has done here. The excess volume area is only described as a function provided by the compliance chamber structures. So we can see that it is not the usual case that one would interpret a term to be limited in this way, but we believe that the evidence here shows that that's the only thing that BDC... That's what they invented. Dr. Weinberg describes his invention as placing a compliance chamber downstream of the valve. I think you argued to us it's a means plus function term, but you didn't get a chance to make that argument to the district court, and it hasn't reached that question, correct? The district court did not reach that question. As a legal matter, we do believe this court could reach that question and affirm on that basis, even though it was not raised below. That argument was prompted by BDC's arguments here, saying the excess volume area has no structure. It's just a space. It was those arguments that... They push so hard on this idea that it's structureless, and you can't limit it to any kind of structure. That says, okay, well, that sounds a lot like the Williamson case, where you're claiming function without any structure. That is an alternative route to get to the same place. I think there's some issues here about the claim construction that really impact the rest. First of all, the claim refers to storing the volume, and I'm not sure that the accused device would be viewed as storing a separate volume of the test system fluid. The word storing suggests putting something aside. So that favors you, but on the other hand, I look at the specification column two, line 53, and I see language which favors the other side. The test chamber also has a compliance chamber, which provides a volume of only a gas or elastic material, which compresses under the pressure placed upon fluid in the test chamber and allows fluid in the test chamber to occupy a portion of the volume. That sounds like the construction that they're articulating. But they don't rely on that either, so I'm not sure that... I guess what I'm suggesting is it seems to me that the briefing on the claim construction issue is more complicated than either side seems to recognize. The claim construction issue here in this case is, I'd agree, it's a little thorny. I think that is because BDC made this term up to be more vague, to go beyond what it actually disclosed in the specification,  as the benefits and the structures that provide the benefits in its alleged invention. To the extent that there are these factual questions about, well, maybe it infringes, maybe it doesn't, we certainly agree that there's questions to be resolved later on the merits. All you have to find here is that there wasn't a clear error in finding that there were substantial questions of infringement, again, as I said, or substantial questions of infringement, sorry, substantial questions of invalidity or infringement. But to the extent that this court wants to give some guidance to the district court when it returns to the merits, that's fine, but those are questions that the district court expressly acknowledged that it would take up as it goes along, as the case develops. Frankly, that's precisely what we had suggested at the end of the hearing. At the end of the transcript, we argued to the district court, look, there's some tricky issues here as it relates to infringement. We don't think the validity case is very tricky. We think that's pretty straightforward. But if you have any doubts, then you should let this case proceed. The patentee has to make a clear showing of a right to a preliminary injunction. They're trying to keep our product from going on to the market with a patent that we believe, frankly, should not have been granted and there's questions as to the validity case. If the patentee can't make a clear showing of infringement, then it's not entitled to an injunction. And we think that's been shown here. One last comment I would make in terms of the validity case is that I think it's important to keep in mind that the reason the patent office the reason the patent office granted this patent, allowed the patent, is because BDC persuaded the office that although these compliance chamber structures were well-known, BDC described compliance chambers as storing volume of fluid. They were well-known in real-time systems, but BDC claimed that putting one into an accelerated valve test system was entirely new. And we've shown that BDC's claim was false. We have multiple prior art documents, none of which were before the office, that teach accelerated testers with compliance chambers. We've got Dynatech and its capacitance tank. She has an air chamber, which BDC agreed is a compliance chamber. And then there's the Lew reference, the journal article, that teaches all the available commercial accelerated testers had adjustable compliance. And so those facts demonstrate that there is at least a substantial question of validity. And for those reasons, we would ask the court to affirm the district court's order. Thank you, counsel. Mr. Tampkin, there's a little rebuttal time. Close to two minutes. Thank you. Thank you, your honors. I'll start backwards. First of all, I think that last discussion was very insightful in terms of what the district court did wrong. Which is, there are compliance chambers in the prior art. And that's enough to find obviousness or anticipation. That's not correct. There has to be compliance chambers, or there has to be an excess volume area in the special configuration that exists. In other words, it has to work at an accelerated rate. It has to be in fluid communication with the return chamber. And so, it is not simply there were compliance chambers. It's they have to meet the specific configuration. That's important. I also want to talk about a question that was asked about the excess volume area. Is it relevant? It is. The construction, the court's faulty construction of an excess volume area is always going to be relevant to the anticipation or obviousness question. The court, for example, the court said that an excess volume area must be a compliance chamber. And it must be a compliance chamber, but Dependent Claim 9 claims a compliance chamber. So what we're going to end up doing is we're going to end up going through a whole claim construction down below without any guidance from this court. And I think that would be a mistake. One thing I want to end with is there is infringement. This is not a hard infringement case. An excess volume area is described in the specification. It's described in column 12 of the specification. But the claims themselves describe what this excess volume area does. And in this case, that excess volume area is working at an accelerated rate. In the device itself, the chambers that are there are compressed. Those tubes are compressed. That volume created by the compression is where the excess volume goes for during the drive stroke or during the compression. And then it is released. It's in the return chamber. It's operating at an accelerated rate. I don't think there's a lot of confusion about whether or not there is actual infringement. I think that's very important. But the court simply got the claim construction wrong. And also as a result got infringement wrong. As you can see, your time has expired. We thank both counsel and the cases submitted. Thank you, John. That concludes our arguments for today.